UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|---|---|---|---|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Tiffany Saltzman-Jones
Kevin Lahm

Attorneys Present for Defendants:

Michael Lawlor
Joseph Royster

**Proceedings:**    ZOOM HEARING RE: DEFENDANT COLONY INSURANCE COMPANY'S MOTION TO DISMISS (Dkt. 25, filed on November 14, 2024)

DEFENDANT COUNTRY MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS (Dkts. 26-27, filed on November 15, 2024)

## I.    INTRODUCTION

On July 31, 2024, plaintiff Landmark American Insurance Company ("Landmark") filed this action against defendants Colony Insurance Company ("Colony") and Country Mutual Insurance Company ("Country Mutual"). Dkt. 1 ("Compl."). Landmark asserts eight claims: (1) declaratory relief against Colony; (2) declaratory relief against Country Mutual; (3) equitable contribution against Colony; (4) equitable contribution against Country Mutual; (5) equitable subrogation against Colony; (6) equitable subrogation against Country Mutual; (7) unjust enrichment against Colony; and (8) unjust enrichment against Country Mutual. Id. ¶¶ 47-120. Landmark alleges that, as an excess insurer, it does not have a duty to defend or indemnify Cal Select Builders, Inc. ("Cal Select") in underlying state court litigation until Cal Select's policies with its primary insurers, Colony and Country Mutual, have been exhausted. Id. ¶¶ 52, 61. Landmark therefore seeks to recoup the more than $300,000 in payments that it has made toward Cal Select's defense. Id. ¶¶ 1, 69.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|---|---|---|---|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

On November 14, 2024, Colony filed a motion to dismiss. Dkt. 25 ("Colony MTD"). On November 15, 2024, Country Mutual filed a motion to dismiss. Dkt. 26. On November 18, 2024, Country Mutual filed an amended motion to dismiss. Dkt. 27 ("Country MTD)". On December 9, 2024, Landmark filed an opposition to both motions. Dkt. 30 ("Opp."). On December 23, 2024, Colony and Country Mutual filed their replies. Dkt. 31 ("Colony Reply"); dkt. 32 ("Country Reply").

On January 13, 2025, the Court held a hearing. Colony's motion and Country's motion to dismiss Landmark's complaint are presently before the Court. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

### A.    The Parties

Plaintiff alleges the following facts in its complaint. Landmark, Colony, and Country Mutual are insurance companies. Compl. ¶¶ 2-4. Landmark is a citizen of New Hampshire and Georgia, Colony is a citizen of Virginia and Illinois, and Country Mutual is a citizen of Illinois. Id.

### B.    The Underlying State Court Litigation

Plaintiff's claims arise out of an underlying lawsuit between Crunch Sunset, LLC and Crunch, LLC (collectively, "Crunch") and Cal Select regarding alleged construction defects. Id. ¶ 8. On October 19, 2018, Crunch filed a complaint against Cal Select in Los Angeles County Superior Court. Id. On December 14, 2018, Cal Select filed a cross-complaint against its subcontractors: American Countertops and Floors, Inc. ("ACF") and Watertight Plumbing Inc. ("Watertight"). Id. ¶ 9. Crunch alleges that it hired Cal Select to perform construction work on its gym facility, which is located in a shopping center. Id. ¶ 11. The work included remodeling of the showers, locker rooms, and saunas, as well as removal and installation of new tiling and waterproofing. Id. Crunch alleges that within months of the completion of the remodel in 2013, other shopping center tenants complained about water leaks. Id. ¶ 12. Crunch further alleges that the leaks resulted from defects in Cal Select's work, leading to business interruption, harm to the structures and interior of the gym, and other damages. Id. ¶ 13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|---|---|---|---|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

Cal Select's subcontracts with ACF and Watertight define Cal Select as the contractor and ACF and Watertight as subcontractors, respectively. Id. ¶ 19-20. Each subcontract also contains identical insurance and indemnity provisions, stating:

13. INSURANCE - Subcontractor agrees to obtain and maintain during the life of this contract the following minimum insurance requirements. The Subcontractor shall pay the premiums for such insurance.

(a) GENERAL LIABILITY

$2,000,000 - General Aggregate

$1,000,000 - Products / Completed Operations Aggregate

$1,000,000 - Each Occurrence

$1,000,000 - Personal and Advertising Injury

The Aggregate Limit shall apply separately to this project. Occurrence-based form of policy is required. Claims–made form is unacceptable.

The Subcontractor agrees to name Cal Select Builders, Inc. and the Owner as additional insured on all General Liability Insurance Policies. The Additional Insured endorsement must be a CG 2010 10/93 or its equivalent, and be attached to the Certificate of Insurance. The policy shall stipulate that the insurance afforded the additional insured shall apply as primary insurance and that any other insurance carried by the Contractor or Owner will be excess only and will not contribute with this insurance.

…

14. INDEMNITY - Subcontractor agrees:

(a) To reimburse, protect, indemnify, defend and hold harmless Contractor from all claims, demands, lawsuits, actions, liabilities, expenses and fees or damages to property arising out of the performance of this Subcontract by Subcontractor, its employees, officers, agents, Subcontractors, and material suppliers. This

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|---|---|---|---|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

indemnity expressly excludes the sole or willful negligence of Contractor, its agents or employees.

(b) To assume towards Contractor the same indemnity which Contractor has assumed towards the Owner by the Contract Documents to the extent applicable to this Subcontract.

Id. ¶ 21.  ACF obtained an insurance policy with Country Mutual, and Watertight obtained an insurance policy with Colony.  Id. ¶ 23-24.  After Crunch filed the underlying state court action, Cal Select tendered its defense to its commercial general liability (CGL) insurer, Landmark.  Id. ¶ 22.  On November 17, 2018, Cal Select tendered its defense as an additional insured to Country Mutual, pursuant to ACF's policy.  Id. ¶ 23.  Cal Select also tendered its defense as an additional insured to Colony, pursuant to Watertight's policy.  Id. ¶ 24.  On March 4, 2019, Colony agreed to partially defend Cal Select, subject to a reservation of rights.  Id. ¶ 24.  On October 22, 2019, Country Mutual did the same.  Id. ¶ 23.  Thereafter, Landmark, Country Mutual, and Colony each contributed equal one-third shares of Cal Select's defense costs and fees.  Id. ¶ 25.

### C.    The Policies

#### 1.    Landmark Policy

Landmark issued a CGL policy, No. LHA137149, to Cal Select for the effective policy period of October 1, 2012 to October 1, 2013, which was renewed for the period of October 1, 2013 to October 1, 2014 (the "Landmark policy").  Id. ¶ 32.  It states: "We will pay those sums that the insured becomes legally obligated to pay as damages because of… 'property damage' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages."  Dkt. 1-6 at 15.  The insurance applies to property damage if it is caused by an "occurrence" that takes place in the coverage territory during the policy period.  Id.  In pertinent part, occurrence is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions," and property damage is defined as "physical injury to tangible property, including all resulting loss of use of that property."  Id. at 28-29.

The Landmark policy has an amendment, called an endorsement, titled "INSURANCE REQUIREMENT FOR ALL WORK PERFORMED ON BEHALF OF

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|---|---|---|---|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

INSURED INCLUDING AN INDEMNITY CO-INSURANCE PROVISION WITH PAYMENT CAP." Id. at 74.  It states:

> 1. You, as a condition of this insurance, will require by written contract that any subcontractors working on your behalf maintain primary insurance and name you as an additional insured for such insurance for limits of liability equal to or greater than those shown in the schedule below…
>
> COMMERCIAL GENERAL LIABILITY coverage written on an "occurrence" basis with a current policy period for limits of at least:
>
> $1,000,000 each occurrence
>
> $1,000,000 general aggregate
>
> $1,000,000 products - completed operations aggregate
>
> …
>
> 2. This policy will be excess over, and will not contribute with, any insurance provided by a subcontractor.

Id.

2.      Colony Policy

Colony issued a CGL policy, No. GL953054, to Watertight for the effective policy period of February 3, 2013 to February 3, 2014 (the "Colony policy").  Compl. ¶ 35.  It begins with the same standard CGL coverage provisions and definitions provided in the Landmark policy.  See Section II.C.1.  The Colony policy also has two endorsements related to additional insureds.  Id. at 13-15.  The first, titled "ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION," states:

> **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|----------|------------------------|------|-------------------|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

Id. at 13-14. The second relevant endorsement, titled "ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION – COMPLETED OPERATIONS & ONGOING OPERATIONS AS SCHEDULED," states:

**Section II - Who Is An Insured** is amended to include the person(s) or organization(s) shown in the Schedule (called additional insured), but only with respect to:

(1) Liability for "bodily injury" or "property damage" caused, in whole or in part, resulting from "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard" when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be named as an additional insured on your policy.

(2) Liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by resulting from:

(a) Your acts or omissions; or

(b) The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|---|---|---|---|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

Id. at 15.  Products-completed operations hazard is defined as "all…'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work.'"  Id. at 10.

       3.     Country Mutual Policy

Country Mutual issued CGL Policy Nos. AB9105722-01 and AB9105722-02 to ACF, for the effective policy periods of August 29, 2012 through August 29, 2013 and August 29, 2013 through August 29, 2014 (the "Country Mutual policy").  Compl. ¶ 37. It begins with the same standard CGL coverage provisions and definitions provided in the Landmark policy.  See Section II.C.1.  The Country Mutual policy also includes two endorsements related to additional insureds.  Dkt. 26-2 at 99; dkt. 26-3 at 89.  The first, titled "ADDITIONAL INSURED – MULTIPLE INTERESTS," states:

WHO IS AN INSURED is amended to include as an insured any person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of your operations or premises owned, leased, or rented by you, subject to the following…  If the person(s) or organization(s) shown in the Schedule:

…

10. **Is a person or organization for whom you are performing operations and with whom you have agreed in a written contract or agreement that such person or organization be included as an additional insured on your policy**; this insurance is limited to their liability for "bodily injury," "property damage," or "personal and advertising injury" caused, in whole or in part, by:

a.     Your acts or omissions; or

b.     The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations performed for that insured.  A person's or organization's status as an insured under this paragraph ends when your operations for that insured are completed or the contractor's agreement is terminated.

Dkt. 26-2 at 99-100.  The second relevant endorsement, titled "ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION," states:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|---|---|---|---|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

Section II. Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

…

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Dkt. 26-3 at 89.

> 4.    "Other Insurance" Provisions

The Landmark, Colony, and Country Mutual policies all include the same "Other Insurance" provision. It states:

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | | Date | January 13, 2025 |
|---|---|---|---|---|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | | |

a. Primary Insurance

This insurance is primary except when Paragraph b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph c. below.

b. Excess Insurance

(1) This insurance is excess over:

…

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

///

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|---|---|---|---|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first…

Dkt. 1-6 at 25-26; dkt. 1-4 at 7-9; dkt. 1-5 at 8-9.

**D.    Landmark's Demand for Reimbursement**

Pursuant to these policies and the subcontracts, Landmark alleges that Colony and Country Mutual were to provide primary insurance to Cal Select as an additional insured of its subcontractors' policies, and Landmark was only to provide excess insurance.  Id. ¶ 45-46.  On November 17, 2023, a Landmark representative emailed counsel for Colony and Country Mutual, demanding that they assume 100% of Cal Select's defense and reimburse Landmark for its contributions.  Id. ¶ 26.  On February 27, 2024, counsel for Landmark repeated its demand in a letter.  Id. ¶ 29.  While Country Mutual has not replied substantively, Colony responded that it intended to withdraw its defense of Cal Select.  Id. ¶ 30-31.

**III.   LEGAL STANDARD**

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.' "  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|----------|------------------------|------|-------------------|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

read in the light most favorable to the nonmoving party. <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009); <u>see Moss v. United States Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (<u>e.g.</u>, facts presented in briefs, affidavits, or discovery materials). <u>In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.</u>, 102 F.3d 1524, 1537 (9th Cir. 1996), <u>rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach</u>, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. <u>In re Silicon Graphics Inc. Sec. Litig.</u>, 183 F.3d 970, 986 (9th Cir. 1999); <u>see Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.    DISCUSSION

Landmark seeks a declaration that, as an excess insurer, it owes no duty to defend Cal Select and that, rather, Colony and Country Mutual owe duties to defend as primary insurers until their policies are exhausted. Compl. ¶¶ 47-64. Colony and Country Mutual both argue that this claim fails because Landmark has a duty to defend Cal Select. Colony MTD at 1; Country MTD at 9. Colony and Country Mutual assert that because the underlying complaint alleges defects in Cal Select's own work, unrelated to the scope

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|----------|------------------------|------|-------------------|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

of Watertight's or ACF's work, Landmark is a co-primary insurer with Colony and Country Mutual.  Id.  Alternatively, Colony argues that Colony has no duty to defend Cal Select because the underlying complaint alleges only "completed operations" defects, for which no coverage is provided in Watertight's policy with Colony.  Colony MTD at 1. Both Colony and Country Mutual argue that because the declaratory relief claims fail, Landmark's other claims must also fail.  Colony MTD at 16-17; Country MTD at 14-16.

The Court discusses each argument in turn.

### A.    Landmark's Duty To Defend

Colony contends that the provision relied upon by Landmark in the Landmark policy—"[t]his policy will be excess over, and will not contribute with, any insurance provided by a subcontractor"—only applies where the insurance companies insure the same risk.  Colony MTD at 17-18.  Here, Colony argues that the risks insured by Landmark and Colony are different because Landmark insures Cal Select for its own independent negligence, whereas Colony insures Cal Select only for liability that is caused by Watertight.  Id. at 18-19 (citing (First Mercury Ins. Co. v. Great Divide Ins. Co. (N.D. Cal. 2017) 241 F. Supp. 3d 1028, 1037, fn. 3).  Colony contends that, according to the underlying complaint, Cal Select was negligent in performing design and other construction tasks—tasks that Watertight was not contracted to perform.  Id. at 19. Colony further contends that Cal Select could be independently negligent for failing to retain subcontractors to perform the work that Cal Select performed.  Id.  Because Cal Select's potential liability is based at least in part on its own actions, Colony argues that Landmark and Colony are co-primary carriers who must share defense costs equally.  Id. Country Mutual makes the same argument.  Country MTD at 10.

In opposition, Landmark argues that the underlying complaint does not allege defects arising from Cal Select's own work, or even that Cal Select performed its own work on the remodel.  Opp. at 8.  Rather, Landmark argues, the underlying complaint alleges that Cal Select, as general contractor, failed in its responsibilities to ensure the work was completed.  Id.  Landmark further contends that Colony and Country Mutual are aware of this fact, because they are defending Watertight and ACF as cross-defendants in the underlying litigation.  Id. at 9.  Even if Cal Select is alleged to have negligently performed its own work, Landmark argues that neither the Colony policy nor the Country Mutual policy state that the insurers have no obligation to defend Cal Select

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|----------|------------------------|------|------------------|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

if a portion of the alleged liability is due to Cal Select's own work. Id. Landmark then argues that defendants' reliance on First Mercury is misplaced. Id. at 10.

In reply, Colony argues that it is "simply not true" that the underlying complaint does not allege defects arising from Cal Select's own work. Colony Reply at 5. Colony states that the underlying complaint alleges that Cal Select breached the standard of care "that applies to design and construction." Id. According to Colony, because Watertight was not involved in any design work, Watertight could not have caused this damage. Id. Thus, Colony argues that because the underlying complaint contains allegations of damage not caused by Watertight, it necessarily contains allegations that trigger Landmark's duty to defend. Id. Additionally, Colony disputes any argument that the use of subcontractors relieved Cal Select of all work for which it could be held directly liable. Id. at 6. For example, Colony argues that a general contractor like Cal Select remains responsible for arranging, scheduling, and inspecting the subcontractors' work. Id.

Also in reply, Country Mutual restates its argument that the underlying complaint explicitly alleges independent negligence by Cal Select. Country Reply at 2. Further, Country Mutual argues that Landmark's duty to defend was triggered because the facts alleged in the underlying complaint create a "potential" for coverage. Id. at 3.

When insurers cover the same risk at the same time at different levels, the insurer covering the "first layer" of coverage is referred to as "primary." Croskey et al., Cal. Practice Guide: Insurance Litigation, § 8:175. For primary insurers, "liability attaches immediately upon the happening of the occurrence that gives rise to liability." Montrose Chem. Corp. v. Superior Ct. of Los Angeles Cnty., 9 Cal. 5th 215, 222 (2020), as modified (May 27, 2020). By contrast, excess insurance "refers to indemnity coverage that attaches upon the exhaustion of underlying insurance coverage for a claim." Id.

Here, Colony and Country Mutual argue that Landmark cannot be an excess insurer because the three companies do not cover the same risk. Colony contends that its policy only covers Cal Select as an additional insured for property damage caused, "in whole or in part," by Watertight's "acts or omissions" or "the acts or omissions of those acting on [Watertight's] behalf." Dkt. 1-5 at 13-14. Similarly, Country Mutual contends that its policy only covers Cal Select as an additional insured for property damage caused, "in whole or in part," by ACF's "acts or omissions" or "the acts or omissions of those acting on [ACF's] behalf." Dkt. 26-2 at 99-100. Thus, according to Colony and Country Mutual, they have no duty to defend Cal Select for property damage *not caused*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|---|---|---|---|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

in whole or in part by Watertight and ACF, e.g., property damage caused by Cal Select's independent acts of negligence.  Colony and Country Mutual argue that because Cal Select is not covered as an additional insured for these acts, the excess clause in Landmark's policy endorsement has not been triggered, and Landmark remains Cal Select's primary insurer for claims alleging that Cal Select was independently negligent.

"Additional insured endorsements clearly cover claims against the additional insured based on vicarious liability for the named insured's negligence.  Whether an additional insured endorsement also covers claims against the additional insured for its own negligence (i.e., direct liability) depends on the language of the endorsement." Croskey et al., Cal. Practice Guide: Insurance Litigation, § 7:1409.1.  The Court finds that the language of Colony and Country Mutual's additional insured endorsements, which covers damage "caused, in whole or in part, by [ACF and Watertight's] acts or omissions," does not cover claims for Cal Select's own negligence, following the reasoning of Maryland Cas. Co. v. Nationwide Mut. Ins. Co., 81 Cal. App. 4th 1082, 1090 (2000).

In Maryland, a contractor hired subcontractors and required them to name the contractor as an additional insured in their insurance policies.  Maryland, 81 Cal. App. 4th at 1086.  The general contractor also had its own primary policy.  Id. at 1087.  The subcontractors obtained insurance, but the insurance for the contractor applied only to the extent that the general contractor was "held liable for [the subcontractors'] acts or omissions arising out of and in the course of operations performed for [the contractor]." Id. at 1087.  One subcontractor's policy also stated: "Coverage provided to the additional insured under this endorsement is primary, but only with respect to acts or omissions of the named insured.  Any other insurance maintained by the additional insured is deemed to be excess."  Id.  Interpreting these provisions in a "consistent and reasonable manner," the court found that the additional insured provision created limited vicarious liability coverage for the additional insured.  Id. at 1090.  The court declined to find that the contractor's own policy was excess, because it "would alter the purpose and nature of the additional insured endorsement by creating coverage for all of [the contractor's] direct acts and for the other subcontractors' acts."  Id.  It concluded that when there was a potential that [the additional insured] would be vicariously liable for the [named insured's] alleged negligence… and a potential [the additional insured] would be liable for its own negligence," the insurance providers for the named insured and the additional insured shared a duty to defend the underlying action.  Id. at 1091.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|---|---|---|---|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

Other courts have applied <u>Maryland's</u> reasoning to find that, for identical policies, the additional insured is only covered for liabilities traceable to defects in the named insured's work. <u>See</u> <u>First Mercury Ins. Co. v. Great Divide Ins. Co.</u>, 203 F. Supp. 3d 1043, 1052 (N.D. Cal. 2016) ("As in <u>Maryland</u>, the language in the governing contracts does not make Elite broadly responsible for all liabilities incurred by the other Underlying Defendants, but instead makes Elite responsible only for those liabilities traceable at least in part to the acts or omissions of Elite or those acting on Elite's behalf."). Further, in <u>Contractors Bonding</u>, the Court found that "[a]s in [<u>Maryland</u>], the additional insured and primary insurance endorsements do not make the subcontractor broadly responsible for all defects related to the remodel of Wimmer's home. Rather, AmTrust is only responsible for liabilities traceable to the defects in Grasshof's work." <u>Contractors Bonding & Ins. Co. v. AmTrust Int'l Underwriters Ltd. (AmTrust)</u>, No. 20-CV-03248-RS, 2021 WL 2355390, at *4 (N.D. Cal. June 9, 2021), <u>aff'd sub nom.</u> <u>Contractors Bonding & Ins. Co. v. AmTrust Int'l Underwriters Ltd.</u>, No. 21-16157, 2022 WL 4481494 (9th Cir. Sept. 27, 2022).

Here, the parties dispute whether the underlying state court complaint alleges *only* liabilities traceable, at least in part, to the acts or omissions of ACF and Watertight, or whether it also alleges liability traceable to Cal Select for its own conduct. Only in the latter case would Landmark's duty to defend arguably be triggered, assuming that Landmark's excess clause is enforceable.[1]

Under California law, "[i]t is ... a familiar principle that a liability insurer owes a broad duty to defend against claims that create a potential for indemnity." <u>Horace Mann Ins. Co. v. Barbara B.</u>, 4 Cal.4th 1076, 1081 (1993) (citation omitted). "Implicit in this

---

[1] The Court does not reach this question. The parties' moving papers appear to assume that Landmark's excess clause is enforceable. Nevertheless, the Court notes that enforcement would depart from the "modern trend" of "requir[ing] equitable contributions on a pro rata basis from all primary insurers regardless of the type of 'other insurance' clause [including excess-only clauses] in their policies." <u>Dart Indus., Inc. v. Com. Union Ins. Co.</u>, 28 Cal. 4th 1059, 1080 (2002). At oral argument, Landmark cited <u>Advantage Roofing & Constr. of Louisiana, Inc. v. Landmark Am. Ins. Co.</u>, No. CV 16-677-JWD-RLB, 2018 WL 1955516, at *8 (M.D. La. Mar. 13, 2018) to argue that the excess clause applies in this case. Having reviewed the case, the Court finds that it does not change the result of this order, as it addresses an issue not reached by the Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|----------|----------------------|------|------------------|
| Title    | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." Id. (citations omitted). Given the relative ease with which this duty is triggered, an insurer is relieved of it only "if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." Montrose Chemical Corp. v. Superior Court, 6 Cal.4th 287, 300 (1993); see also Anthem Electronics, Inc. v. Pacific Employers Ins. Co., 302 F.3d 1049, 1055 (9th Cir. 2002) (emphasis in original) (citation omitted) ("[T]he insurer must conclusively establish the absence of any potential for coverage in order to prevail on the duty-to-defend issue."). "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." Horace Mann Ins., 4 Cal. 4th at 1081 (citation omitted).

Examining the underlying state court complaint, Crunch alleges ten claims against Cal Select and 50 Doe defendants, including negligence. Dkt. 1-1. Specifically, it alleges that the "[water] leaks were significant and resulted from defective workmanship *in connection with the work performed by Cal Select* under the Contract [with Crunch]." Id. ¶ 12 (emphasis added). It further alleges that Cal Select "breached its duty of care to [Crunch] as a result of the failure to properly perform work and failure to meet the standard of care that applies to design and construction in the locale." Id. ¶ 31. The Court finds that the underlying complaint contains allegations that would come within Landmark's policy coverage, as it alleges property damage resulting from Cal Select's own negligent work. However, Landmark appears to argue that extrinsic evidence, notably Cal Select's subcontracts with ACF and Watertight, "plainly show" that Cal Select did not perform its own work for the remodel, but rather "subcontracted its obligations to ACF and Watertight." Opp. at 8. Colony and Country Mutual dispute this fact. Colony argues that the allegation that Cal Select failed to meet the standard of care for design, for which Watertight had no involvement, demonstrates that Cal Select committed its own negligent acts unrelated to Watertight. Colony also argues that, pursuant to the underlying complaint's allegations, Cal Select could be found to have been independently negligent for failing to ensure that its subcontractors adequately performed their work.

The Court finds that whether Cal Select negligently performed its own work on the remodel, including design work, is disputed, and thus, the duty to defend is triggered here. See Croskey et al., Cal. Practice Guide: Insurance Litigation, § 7:525 ("Where

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|----------|------------------------|------|------------------|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

coverage of the claim against the insured depends on unresolved factual issues, "a bare 'potential' or 'possibility' of coverage [is] the trigger of a defense duty"). Additionally, the Court finds that the facts alleged in Crunch's complaint could give rise to the claim that Cal Select was independently negligent for not ensuring that ACF and Watertight properly performed their work, which would be another basis for liability that was not caused, in whole or in part, by ACF and Watertight's acts or omissions. See, e.g., Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co., 5 Cal. 5th 216, 222 (2018) (negligent hiring, retention, or supervision can be "accidents" under standard CGL policies). Accordingly, because the underlying complaint contains allegations of negligence on the part of Cal Select that are not traceable, in whole or in part, to ACF and Watertight, Landmark's duty to defend is triggered and Landmark would be responsible for defending against claims for such liability. See First Mercury, 241 F. Supp. 3d at 1037 ("Defendant overlooks the possibility that… the state court proceedings could indicate that none of the Underlying Plaintiffs' harm was traceable to Elite's actions. This potential for the Santa Clara Defendants to be responsible for liability in the state court action is sufficient to trigger Defendant's duty to defend under Maryland.")

### B.    Colony's Duty To Defend

Alternatively, Colony argues that it does not have *any* duty to defend Cal Select, because the underlying complaint alleges only "completed operations" damages, which are not covered in Colony's policy with Watertight. Colony MTD at 20. Colony first asserts that all of the damages alleged in the underlying state court action occurred from water intrusion that occurred after Watertight's work was completed, as the leaks were not even noticed until months after the remodel. Id. at 20-21.

Colony states that, pursuant to its two policy endorsements, Cal Select is only covered for claims based on property damage taking place "in the performance of [Watertight's] ongoing operations for [Cal Select]." Id. at 20. Colony argues that its obligations must take into account Watertight's subcontract with Cal Select, as both endorsements state that an additional insured is only covered if such coverage was agreed upon in writing. Id. at 22. Colony states that because the subcontract requires "a CG 2010 10/93 or its equivalent," which is a standard form that only insures additional insureds with respect to ongoing operations, the subcontract therefore explicitly requires that additional insureds be insured only with respect to ongoing operations. Id. Colony next states that the subcontract only requires that insurance for additional insureds be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|----------|-----------------------|------|------------------|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

maintained "during the life of this contract," which Colony argues ended when Watertight completed its work. Id. Finally, Colony disputes any argument that the endorsements create ambiguity that entitles Cal Select to "completed operations" coverage. Id. at 24. Colony argues that such an interpretation is unreasonable because it ignores that the subcontract between Cal Select and Watertight provided for a different scope of coverage for Cal Select. Id. at 26.

In opposition, Landmark argues that, as an initial matter, it is not clear from the underlying state court complaint whether the damage to Crunch's property began during Watertight's work or after Watertight's work was completed. Opp. at 12. Rather, Landmark contends that the underlying complaint "merely states that third party tenants began *complaining* about water leaks after completion of the remodel." Id. According to Landmark, whether the damage began before the work was completed and whether work was completed such that "products-completed operations hazard" coverage is triggered are questions of fact. Id. Even assuming *arguendo* that the allegations in the underlying complaint only arise out of "completed operations," Landmark contends that coverage for Cal Select is still available pursuant to the Watertight's policy endorsements. Id. at 13.

Landmark also argues that no part of the subcontract states that Watertight is unable to provide additional insureds coverage broader than CG 2010 10/93, and that Colony ignores the rest of the paragraph in the subcontract, which requires subcontractors to obtain GCL coverage that includes "Products/Completed Operations Aggregate" coverage. Id. Further, Landmark argues that the next paragraph requires subcontractors to indemnify Cal Select for all damage to property arising out of performance of the subcontract, regardless of whether operations are ongoing or completed. Id. at 15. At most, Landmark argues that the endorsement language is ambiguous, and ambiguous policy language is construed in favor of coverage. Id. at 17.

In reply, Colony disputes Landmark's assertion that the alleged property damage could have taken place prior to the completion of the work. Colony Reply at 8. Even if it did, Colony contends that Cal Select's status as an additional insured ended at least a month before the completion of the work. Id. at 9. Separately, Colony disputes Landmark's interpretation of the subcontract provisions. Id. at 10.

The Court finds that Colony has a duty to defend Watertight. Even assuming, *arguendo*, that Colony's policy only covers the ongoing operations period, Colony has not "conclusively establish[ed] the absence of any potential for coverage," as an insurer is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | | Date | January 13, 2025 |
|---|---|---|---|---|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | | |

required to do "to prevail on the duty-to-defend issue."  See Anthem Electronics, Inc. v.
Pacific Employers Ins. Co., 302 F.3d 1049, 1055 (9th Cir. 2002) (emphasis in original)
(citation omitted).  While Colony asserts that damage from water leaks can only arise
after the ongoing operations period, the Court finds that this fact is disputed.  As
Landmark notes, the damage caused by water leaks, which were noticed after the
remodel's conclusion, could have begun during Watertight's operations.  Accordingly,
Colony's duty to defend is triggered here.  See Croskey et al., Cal. Practice Guide:
Insurance Litigation, § 7:525 ("Where coverage of the claim against the insured depends
on unresolved factual issues, "a bare 'potential' or 'possibility' of coverage [is] the
trigger of a defense duty").

### C.    Other Claims

Colony argues that because Landmark's claim for declaratory relief fails, its other
claims for equitable contribution, equitable subrogation, and unjust enrichment must also
fail.  Colony MTD at 16-17.  Similarly, Country Mutual contends that, as a co-primary
carrier, Landmark is not entitled to subrogation, and that all three carriers have already
been equitably contributing to Cal Select's defense.  Country MTD at 14-16.

In opposition, Landmark argues that even assuming Colony and Country Mutual
are correct in their analyses of the duty to defend, Landmark's claims for equitable
contribution, equitable subrogation, and unjust enrichment should survive dismissal.
Opp. at 18.  This is because, according to Landmark, both the Colony and the Country
Mutual policy expressly cover Watertight and ACF's indemnity obligations to Cal Select
as "insured contracts."  Id.  Landmark cites to Country Mutual's policy, which applies to
liability for damages "[a]ssumed in a contract or agreement that is an 'insured contract,'
provided the… 'property damage' occurs subsequent to the execution of the contract or
agreement.  Solely for the purposes of liability assumed in an 'insured contract,'
reasonable attorney fees and necessary litigation expenses incurred by or for a party other
than an insured are deemed to be damages because of… 'property damage.'"  Id. at 19.
Landmark then provides the definition of "insured contract" in Country Mutual's policy:
"That part of any other contract or agreement pertaining to your business… under which
you assume the tort liability of another party to pay for "bodily injury" or "property
damage" to a third person or organization.  Tort liability means a liability that would be
imposed by law in the absence of any contract or agreement."  Id. at 19.  Landmark
contends that the subcontracts with Watertight and ACF are insured contracts under this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|---|---|---|---|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

definition and California law. Id. Further, Landmark contends that paragraph 14 of Cal Select's subcontracts with Watertight and ACF requires the subcontractor to indemnify Cal Select for all claims arising out of the performance of the subcontract. Id. at 20. Accordingly, Landmark argues that it is entitled to reimbursement from Colony and Country Mutual, and that Landmark can be subrogated to Cal Select's right to recover under its indemnity agreements with Watertight and ACF. Id. at 20-21.

In reply, Colony contends that Landmark's argument is not properly made on a motion to dismiss because it was not made in Landmark's complaint. Colony Reply at 12. Separately, Colony argues that Landmark incorrectly conflates Colony's potential indemnity obligations under the Colony policy with Watertight's potential indemnity obligations under the subcontract. Id. Additionally, Colony argues that, even assuming the subcontract is an "insured contract," Watertight cannot validly agree to indemnify Cal Select for its sole negligence under California law. Id. Also in reply, Country Mutual argues that ACF's subcontract obligates ACF to indemnify Cal Select only for liabilities arising from the acts of ACF. Country Reply at 5.

As an initial matter, the Court differentiates between Landmark's claims of equitable contribution and equitable subrogation. "Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid *was equally and concurrently* owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk." Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1279, 1293 (1998). Equitable subrogation, on the other hand, is the "appropriate remedy for an insurer that has paid a claim or incurred defense costs to obtain reimbursement from… other insurers who were primarily liable to pay the insured's claim or to indemnify and defend a third party claim against the insured." Croskey et al., Cal. Practice Guide: Insurance Litigation, § 8:65.1. "Whereas subrogation requires that the party to be charged be in an equitable position ... inferior to that of the insurer such that justice requires the entire loss be shifted from the insurer to the party to be charged, contribution permits liability for the loss to be allocated among the various insurers without regard to questions of comparative fault or the relative equities between the insurers." Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1279, 1296 (1998) (internal citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | | Date | January 13, 2025 |
|---|---|---|---|---|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | | |

Landmark's arguments, as for its remaining claims, appear to be based on the indemnity provision in Cal Select's subcontracts with Watertight and ACF. The Court finds that these arguments are properly made on a motion to dismiss because the provisions at issue were incorporated in Landmark's complaint. See dkt. 1-4 at 4; dkt. 1-5 at 5. Landmark argues that the subcontracts constitute "insured contracts" under the insurance policies. Courts construe "insured contract" provisions broadly in favor of coverage. Croskey et al., Cal. Practice Guide: Insurance Litigation, § 7:1475.1. The Court finds that the subcontracts here are "insured contracts" pursuant to Golden Eagle Ins. Co. v. Ins. Co. of the W., 99 Cal. App. 4th 837, 851 (2002), which held that a contract in which a subcontractor indemnified the general contractor against tort liability for work performed by the subcontractor was covered as an "insured contract," as referenced in CGL policies. Accordingly, because the the contractual liability exclusion does not apply to insured contracts, it does not apply to Cal Select's subcontracts with ACF and Watertight.

The Court finds that, because the subcontracts provide for indemnity, they may act as a bar to equitable contribution, which would excuse the indemnitee's insurer, Landmark, from contributing to a loss paid by the indemnitors' insurers, Colony and Country Mutual. See Croskey et al., Cal. Practice Guide: Insurance Litigation, § 8:75. "To hold otherwise would negate the indemnity provision in the construction contract." Hartford Cas. Ins. Co. v. Mt. Hawley Ins. Co., 123 Cal. App. 4th 278, 282 (2004). "Whether an indemnity agreement bars equitable contribution between the indemnitor's and indemnitee's liability insurers is an issue of contract interpretation." Croskey et al., Cal. Practice Guide: Insurance Litigation, § 8:76.

Here, the indemnity provision states that the subcontractor agrees to the following:

To reimburse, protect, indemnify, defend and hold harmless [Cal Select] from all claims, demands, lawsuits, actions, liabilities, expenses and fees or damages to property arising out of the performance of this Subcontract by Subcontractor, its employees, officers, agents, Subcontractors, and material suppliers. This indemnity expressly excludes the sole or willful negligence of [Cal Select], its agents or employees.

Compl. ¶ 21. The Court finds that this provision is characterized as a "general indemnity" agreement, as it does not specifically address Cal Select's active negligence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|----------|----------------------|------|------------------|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

See id. § 8:83 ("A 'general indemnity' provision… is one that does not specifically address the indemnitee's active negligence (e.g., an agreement to hold the indemnitee harmless from "all claims or causes whatsoever)").   A general indemnity clause "may be construed to provide indemnity for a loss resulting in part from an indemnitee's [p]assive negligence, [but] will not be interpreted to provide indemnity if an indemnitee has been [a]ctively negligent." Rossmoor Sanitation, Inc. v. Pylon, Inc., 13 Cal. 3d 622, 628 (1975).  "Passive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty imposed by law.  Active negligence, on the other hand, is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform… Whether conduct constitutes active or passive negligence depends upon the circumstances of a given case and is ordinarily a question for the trier of fact." Id. at 629 (internal citations omitted).  Because the question of Cal Select's conduct as an indemnitee will determine whether the indemnity provision bars Landmark's equitable contribution claim, and thus whether Landmark is equitably subrogated to Cal Select's rights against the indemnitor subcontractors, the Court finds that such arguments are better decided on a motion for summary judgment.  Accordingly, the Court denies defendants' motions to dismiss Landmark's equitable contribution and equitable subrogation claims.

Turning to Landmark's unjust enrichment claims, the Court finds that "as a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights." California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc., 94 Cal. App. 4th 151, 172 (2001).  "When parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." Hedging Concepts, Inc. v. First All. Mortg. Co., 41 Cal. App. 4th 1410, 1420 (1996), as modified on denial of reh'g (Feb. 22, 1996).  Accordingly, the Court finds that Landmark may not proceed on its quasi-contract claim because the subject matter of the claim—whether Colony and Country Mutual must indemnify Landmark for all damages arising out of the performance of the subcontracts—is governed by express contracts, including the subcontracts and the insurance policies.  The Court therefore grants defendants' motions to dismiss Landmark's unjust enrichment claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-06445-CAS-KSx | Date | January 13, 2025 |
|---|---|---|---|
| Title | Landmark American Insurance Co. v. Colony Insurance Co. et al. | | |

## V.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Colony's and Country Mutual's motions to dismiss.  The Court **GRANTS** their motions to dismiss for Landmark's first, second, seventh, and eighth claims without prejudice.  The Court **DENIES** their motions to dismiss for Landmark's third, fourth, fifth, and sixth claims for equitable contribution and equitable subrogation.

IT IS SO ORDERED.

|  | 00 | : | 14 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |